UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES OTTAVIANO,

    Plaintiff,

v.                                     CASE No. 8:08-CV-2204-T-33TGW

NAUTILUS INS. CO.,

    Defendant.

_____

## O R D E R

THIS CAUSE came on for consideration upon the Motion to Determine Entitlement to Award of Attorney Fees and Taxable Costs (Doc. 11).[1] Because the defendant's settlement of this case is equivalent to a confession of judgment, the plaintiff is entitled to an award of attorney's fees pursuant to Fla. Stat., §627.428.

I.

The plaintiff, James Ottaviano, is a contractor who builds commercial swimming pools (Doc. 11-5, Ex. G, ¶2). He was insured by the

---

[1] On April 20, 2009, this Court referred the Motion to Determine Entitlement to Award of Attorney Fees and Taxable Costs (Doc. 11) to the Magistrate Judge for the issuance of a report and recommendation. (Doc. 19). By this Order, the Court withdraws its referral of the Motion.

defendant under a Commercial General Liability insurance policy (id., p. 8; id. at Ex. G, ¶2). The plaintiff paid an annual premium and fees totaling $2,046.67, for insurance for his business of installing, servicing and repairing swimming pools (Doc. 11-5, p. 8).

During the pertinent time period, the plaintiff contracted with the Girl Scouts to build a swimming pool for one of its facilities (id. at Ex. G, ¶¶2, 3). The plaintiff states that, due to improper construction of the swimming pool shell by subcontractors, the pool shell cracked and was therefore unable to retain water at an appropriate level (id., ¶¶4a, b). The Girl Scouts notified the plaintiff of the problem and that they were seeking from the plaintiff damages for breach of contract and breach of warranty (see id.).

The plaintiff informed the defendant of the Girl Scouts' claim against him (id., ¶4b). The defendant responded in correspondence dated April 15, 2008, that they "could not be of service" to the plaintiff because "there is no coverage for this claim under your Nautilus Insurance Company policy" (Doc. 11-4, pp. 1, 3). In this regard, it stated (id. at p. 3):

> [t]his policy provides coverage for property damage arising from an "occurrence" during the policy period....

> A crack in the pool you built does not meet the definitions of an occurrence per the policy definitions stated above. Therefore, Nautilus Insurance Company must respectfully disclaim coverage for this loss.

The plaintiff subsequently retained a public adjuster to assist him in handling the claim, but the defendant refused to change its position regarding coverage (Doc. 11-5, Ex. G, ¶4d). Consequently, the plaintiff retained counsel to represent him in this matter (<u>id</u>.).

In response, the defendant's counsel reiterated in correspondence dated August 21, 2008, that there is "no coverage" for this claim under the policy, elaborating that (Doc. 11-4, p. 6):

> As we understand it, the leak was discovered during the final phase of the construction of the pool, not after its completion. Given this, the loss was not caused by Mr. Ottaviano's completed product. Since the loss did not arise out of the completed product, Exclusion j, Damage to Property, would apply and the Policy would not provide coverage for the loss claimed.
>
> Assuming that the loss was caused by Mr. Ottaviano's completed product, there is no coverage for the loss. This is so because Mr. Ottaviano's product or "work" is defined by the Policy in a way that includes work performed by Mr. Ottaviano and/or on his behalf by others.... The definition of "work" also includes all warranties or representations given by or made by Mr. Ottaviano

> regarding the fitness, quality, durability, performance or use of the work. Given this, the Policy does not warrant or guarantee the soundness of Mr. Ottaviano's "work," not does it provide coverage to Mr. Ottaviano for the expense incurred by him in making warranty repairs to that work.
>
> We understand that Mr. Ottaviano believes that Exclusion I creates coverage for the repair of the leak ... because Mr. Ottaviano had subcontractors working on the job.... When one applies the modified Exclusion I contained in Endorsement L291, its [sic] is clear that the Policy excludes coverage to Mr. Ottaviano for losses arising out of his work, as well as work performed for him by his subcontractors. Given this, there is no coverage for the repair of the pool even if the leak was caused by the defective workmanship of Mr. Ottaviano's subcontractors.

Due to the defendant's repeated denials of coverage, the plaintiff filed a lawsuit in state court against the defendant on September 30, 2008, alleging that it breached the insurance policy by denying coverage for claims made against him by the Girl Scouts regarding the defective swimming pool constructed by the plaintiff (Doc. 2; Doc. 11-5, Ex. G, ¶¶3, 5, 15, 16). After removing the case to federal court (Doc. 1), the defendant filed a motion to dismiss the plaintiff's claim, arguing, among other things, that there was no coverage for the claim (Doc. 3). The plaintiff argues that insurance policy

endorsement L288 provides coverage for property damage caused by a subcontractor (Doc. 11-5, pp. 53-54; Doc. 11-7, Ex. H, ¶7).

On October 31, 2008, the plaintiff was served with a lawsuit by the Girl Scouts, claiming that he breached their contract by building a defective swimming pool (Doc. 11-5, Ex. G, ¶9). The plaintiff forwarded a copy of that lawsuit to the defendant, and an amended complaint demanding that the defendant defend and indemnify the plaintiff (id., ¶10).

On November 18, 2008, the defendant informed the plaintiff that it had "agree[d] to defend and indemnify [the plaintiff] in the lawsuit brought against him by the Girl Scouts" with no policy coverage defenses being reserved, and that the only remaining issue was attorney's fees (id., ¶11; Doc. 11-4, pp. 10, 13). The defendant added that "the parties should jointly advise the federal court that the coverage dispute has been settled" (Doc. 11-4, p. 10). Accordingly, the plaintiff filed with the court a "Notice of Partial Settlement Agreement," which stated that "the parties have resolved the coverage issues in this case" and that the only remaining issue is attorney's fees (Doc. 7).

Because the parties were unable to resolve the issue of attorney's fees without court intervention, they were directed to file memoranda on the

issue of the plaintiff's entitlement to an attorney's fee (Docs. 8, 9, 10).[2] Accordingly, the plaintiff filed his Motion to Determine Entitlement to Award of Attorney Fees and Taxable Costs (Doc. 11). The defendant filed a memorandum in opposition to the motion (Doc. 12). The plaintiff, with leave of court, filed a reply (Doc. 18).

II.

The plaintiff asserts that he is entitled to an award of attorney's fees pursuant to Fla. Stat., §627.428, which provides that:

> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named ... insured ... under a policy or contract executed by the insurer, the trial court ... shall adjudge or decree against the insurer and in favor of the insured ... a reasonable sum as fees or compensation for the insured's ... attorney prosecuting the suit in which the recovery is had.[3]

Furthermore, "the Florida Supreme Court has held that this rule also applies when the insured and the insurer settle an action." Canal Ins. Co. v. SP Transport, Inc., 272 Fed. Appx. 825, 827 (11th Cir. 2008)(unpub. dec.)(citing Wollard v. Lloyd's & Cos. of Lloyd's, 439 So.2d 217, 218-19

---

[2] The Court reserved briefing on the amount of attorney's fees pending the outcome of the issue of entitlement (Doc. 10).

[3] The parties agree that the issue of attorney's fees is governed by Florida law. (Doc. 11, p. 8; Doc. 12, p. 4).

-6-

(Fla.1983)). Thus, "[u]nder Florida law, the settlement is the equivalent of a confession of judgment and entitles the insured to attorney's fees because the insurer has 'declined to defend its position in the pending suit.'" Canal Ins. Co. v. SP Transport, Inc., supra (quoting Wollard v. Lloyd's & Cos. of Lloyd's, supra). See also United States v. Pepper's Steel & Alloys, Inc., 289 F.3d 741, 742 (11th Cir. 2002)(noting that, under Florida law, an insured may recover attorneys' fees incurred in reaching a settlement).

In this regard, the Florida Supreme Court stated that "it is neither reasonable nor just" that an insurer can avoid liability for statutory attorney's fees by settling the case after the lawsuit is filed but before judgment is entered. Ivey v. Allstate Ins. Co., 774 So.2d 679, 684 (Fla. 2000). A contrary interpretation would obstruct the purpose of §627.428, which "is to discourage insurance companies from contesting valid claims and to reimburse insureds for their attorney's fees when they must enforce in court their contract with the insurance company." Pepper's Steel & Alloys, Inc. v. United States, 850 So.2d 462, 465 (Fla. 2003).[4] Therefore, "[a]n insurer will owe attorney's fees

---

[4] In this connection, the Florida Supreme Court explained that "[r]equiring the plaintiff to continue litigation in spite of an acceptable offer of settlement merely to avoid having to offset attorney's fees against compensation for the loss puts an unnecessary burden on the judicial system, fails to protect any interest – the insured's, the insurer's or

to its insured where coverage is disputed and the insured prevails whether by judgment or a confession of judgment." First Floridian Auto & Home Ins. Co. v. Myrick, 969 So.2d 1121, 1123-24 (Fla. App. 2007)(citation and quotations omitted).

Moreover, a monetary settlement is not required to establish an entitlement to fees under this statute. See O'Malley v. Nationwide Mut. Fire Ins. Co., 890 So.2d 1163, 1164 (Fla. App. 2004). Rather, the pertinent inquiry is whether the insured received a benefit from the settlement. See, e.g., id. (The insurer provided a defense and settled the third-party claim, thereby providing the insured the precise relief the insurer claimed the insured was not entitled to).

### III.

The plaintiff contends that he is entitled to an award of attorney's fees pursuant to Fla. Stat., §627.428, because "the insurance company's change of its prior decision to deny insurance coverage and its later admission of the existence of coverage for the claim of the Girl Scouts after [the

---

the public's – and discourages any attempt at settlement. This literal requirement of the statute exalts form over substance to the detriment of public policy, and such a result is clearly absurd." Wollard v. Lloyd's & Cos. of Lloyd's, supra, 439 So.2d at 217, 218-19.

plaintiff] filed the lawsuit operates as a confession of judgment under Florida law" (Doc. 11, p. 8). The defendant argues that the plaintiff is not entitled to attorney's fees because the lawsuit was premature (Doc. 12). Under the circumstances of this case, the defendant's settlement of the plaintiff's lawsuit is the functional equivalent of a confession of judgment, which entitles the plaintiff to an award of reasonable attorney's fees.

Thus, prior to the lawsuit, the plaintiff's attempts to obtain coverage for this claim were unsuccessful. Specifically, the defendant told the plaintiff that it "could not be of service" to him because "there is no coverage for th[e Girl Scouts'] claim under your ... policy" (Doc. 11-4, pp. 2-3; see also id., p. 6). It gave several reasons for this denial (id.).

However, after the filing of this lawsuit, the defendant settled this case by agreeing that there was coverage for the Girl Scouts' claim, and that it would defend and indemnify the plaintiff for this claim without any reservation of coverage defenses (id., pp. 10, 13, 16). Thus, after the lawsuit, the defendant changed its position and afforded the plaintiff the exact relief it previously asserted the plaintiff was not entitled to.[5] This circumstance is

---

[5] Although the defendant argues that the intervening circumstance of the Girl Scouts' lawsuit prompted it to provide coverage for the claim (see Doc. 12, p. 3, ¶13), there is no

considered equivalent to a confession of judgment, thereby entitling the plaintiff to a fee award pursuant to Fla. Stat., §627.428. See Amador v. Latin American Property and Casualty Insurance Company, 552 So.2d 1132, 1133 (Fla. App. 1989)("the trial court has no discretion to deny a reasonable attorney's fee to the prevailing plaintiff where the insurance company first disputes the claim and then settles the case after a lawsuit is filed"); Pepper's Steel & Alloys, Inc. v. United States, supra, 850 So.2d at 465 ("In Florida ... a settlement ... is the functional equivalent of a confession of judgment or a verdict in favor of the insured.").

      Furthermore, it was reasonable for the plaintiff to conclude that litigation was necessary in order to compel the defendant to provide coverage for the claim. Thus, the defendant firmly denied coverage for the claim (see Doc. 11-4, pp. 1-8), leaving the plaintiff in the precarious position of an inevitable lawsuit by the Girl Scouts, which, if meritorious, would bankrupt him (Doc. 11-5, Ex. G, ¶17).[6] Moreover, there is no evidence that an

---

explanation, or evidence, which shows that the Girl Scouts' complaint mooted the previous reasons asserted by the defendant for denying coverage.

[6]The plaintiff also argues that the defendant's denial of coverage placed him in a position to expend funds to comply with Fla. Stat., §558.004, which requires a contractor to take certain actions regarding the inspection, and repair, of damage caused by a

improper purpose, such as an attorney's fee award, motivated the plaintiff to file this lawsuit. Rather, the impetus for the lawsuit was the defendant's "repeated and wrongful denials of coverage" (id., ¶¶ 15, 16).

Notwithstanding, the defendant contends that the plaintiff is not entitled to an award of attorney's fees (Doc. 12). The defendant's arguments center on the contention that this lawsuit was premature because it was filed before the Girl Scouts sued the plaintiff for the defective pool. The defendant's arguments are unavailing.

In this connection, the defendant argues that, prior to the Girl Scouts' filing of a lawsuit against the plaintiff, it was not compelled to take action on the plaintiff's behalf because the insurance policy gives the defendant the discretion to "investigate, negotiate and settle claims;" it does not require it (id., pp. 3-4). Therefore, the defendant argues that the plaintiff's claim that it breached the insurance contract is unmeritorious (id., pp. 14-17).

The plaintiff asserts that its lawsuit is meritorious because, "when an insurer first denies coverage that actually exists, the insurer has

---

contractor (Doc. 11, pp. 14-16). However, the plaintiff has not shown that this statute alters the defendant's obligations under the insurance contract, nor is there evidence that the plaintiff gave the insurance company notice of the claim pursuant to that statute.

breached the contract." (Doc. 11, pp. 9-10, citing Gallagher v. Dupont, 918 So.2d 342 (Fla. App. 2005); Hanover Ins. Co. v. Dolly Trans Freight, 2006 WL 3842206 (M.D Fla. 2006)).[7] The defendant disputes that these cases are applicable to this circumstance (Doc. 12), and they do arise in a factually distinct context.

Regardless, the merit of the plaintiff's complaint is not dispositive of the plaintiff's entitlement to attorney's fees under this statute. As the Eleventh Circuit explained (Prime Ins. Co. v. Soil Tech Dist., Inc., 270 Fed. Appx. 962, 964 (11th Cir. 2008)(unpub. dec.)):

> By its very terms, the statute does not require an insured party to succeed on the merits of a case in order to recover attorney's fees. See Fla. Stat. § 627.428(1). Moreover, Florida courts applying the statute have awarded attorney's fees even in cases

---

[7]The plaintiff argues further that the court should consider that the defendant's conduct constituted an unfair and deceptive trade practice prohibited by Fla. Stat., §626.9541 (Doc. 11, pp. 18-19). However, such a claim is not asserted in the complaint.
     Furthermore, the factual basis for this contention is not adequately developed. Thus, the deceptive trade practice is based upon is the defendant's failure to advise the plaintiff of policy endorsement L288, which affords coverage for property damage when the work is done by "adequately insured" subcontractors who performed "specifically and solely for the insured." However, the plaintiff has not proffered evidence that these conditions were satisfied in this instance, and the defendant has not stated the basis upon which it determined that coverage was available for this claim.

where the insured party did not prevail "on the merits."

Rather, "when the insurance company ... agree[s] to settle a disputed case, it has, in effect declined to defend its position in the pending suit," and it is this circumstance that entitles the insured to attorney's fees. See United Auto Ins. Co. v. Zulma, 661 So.2d 947, 948 (Fla. App. 1995). This rule applies even when an insurer's defense is reasonable and in good faith. Id. Accordingly, the plaintiff became entitled to attorney's fees when the defendant decided, for whatever reason, it would settle the claim and provide the relief sought by the plaintiff instead of continuing to litigate the issue of whether there was a breach of contract. See id.

The defendant argues further that the plaintiff is not entitled to an attorney's fee because his liability to the Girl Scouts had not been established (see Doc. 12, pp. 3-4, 11). This contention is related to the merits of the claim, which is rendered moot by the defendant's settlement. Furthermore, liability to the third party needs not be established to justify an award of attorney's fees under this statute. See Stonewall Ins. Co. v. W.W. Gay Mechanical Contractor, Inc., 351 So.2d 403 (Fla. App. 1977).

Rather, the issue is whether the insurer took "a firm position that coverage was not afforded, thereby producing a real and present dispute between the insurer and insured." Id. Here, the defendant took a firm position that there was no coverage for the Girl Scouts' claim, which was inevitably going to (and did) result in a lawsuit against the plaintiff. Therefore, a bona fide dispute existed between the parties when the plaintiff filed this lawsuit.

The defendant argues that it did not unequivocally deny the plaintiff coverage because it included at the end of its denial letters boilerplate disclaimer language that it could possibly change its decision under some unspecified circumstance (Doc. 12, pp. 14-17, citing Doc. 11-4, p. 3).[8] This contention is unavailing. Thus, this is not a circumstance where the defendant stopped short of disclaiming liability and had sought only to

---

[8]For example, the first denial letter stated (Doc. 11-4, p. 3):

> We reserve the right to review any additional claims, amendments to this claim, or lawsuits filed in connection with this matter, to make a separate determination as to whether a defense, or indemnity, might be provided by the Company. It is possible that we might provide a defense and/or indemnity on a new claim, an amended claim, or a lawsuit filed in connection with this claim. Our decision on coverage is based solely on the facts as presented to us to date and should not be construed as applicable to a new claim, an amendment to this claim, or a lawsuit filed in connection with this matter.

preserve its right to contest coverage upon maturation of the claimant's action. See Stonewall Ins. Co. v. W.W. Gay Mechanical Contractor, Inc., supra. Rather, the insurance company stated, for several reasons unrelated to the maturity of the claim, that "there is no coverage for this claim under your ... policy," and that it "regret[s] that [it] could not be of service to [the plaintiff] in this particular instance" (Doc. 11-4, pp. 2-3).[9] Therefore, the contention that the defendant's denial of coverage was equivocal is unmeritorious.

        Finally, the defendant argues that it would be contrary to public policy to award the plaintiff an attorney's fee because he filed the lawsuit prematurely. Thus, the defendant argues that, at the time the plaintiff filed his lawsuit, it was "performing in a manner allowed by the Terms of the Policy" and it had not denied the plaintiff any benefit that was "presently due or owing" (Doc. 12, pp. 11, 18-19). Therefore, it contends the plaintiff was not "forced to sue" to receive benefits, and an award of attorney's fees in this case would encourage unnecessary litigation by rewarding a race to the courthouse

---

[9]The cases cited by the defendant in support of its contention that it did not unequivocally deny coverage because it reserved its right to reevaluate the claim (Doc. 12, pp. 14-17) are inapposite, as they pertain to whether an insured is relieved of its policy obligation to seek permission from its insurer before entering into a settlement with a third party. See First American Title v. National Union, 695 So.2d 475 (Fla. App. 1997); U.S. Fire Ins. Co. v. Mikes, 576 F.Supp.2d 1303 (M.D Fla. 2007).

for attorney's fees even where the insurer was complying with its obligations under the policy (id., pp. 18-19).

This contention is unavailing because it is based upon an erroneous factual premise. Thus, in arguing that it "perform[ed] in a manner allowed by the terms of The Policy," the defendant mischaracterizes its conduct as innocuously declining to settle the Girl Scouts' claim (id., p. 11, ¶51). Rather, the defendant wrongfully denied that coverage existed for the claim, and ceased taking action on the plaintiff's behalf. Thus, the defendant stated that "there is no coverage for this claim under your ... policy," and that it "regret[s] that [it] could not be of service to [the plaintiff] in this particular instance" (see Doc. 11-4, pp. 2-3; see also id., p. 6 ("there is no coverage for the loss")). Therefore, the defendant's response to the plaintiff's request for coverage cannot fairly be characterized as merely declining to settle the claim.

In this regard, the defendant has not cited any authority that the wrongful denial of coverage constitutes "perform[ance] in a manner allowed by the terms of The Policy." Further, by denying coverage for the claim, the defendant denied that the plaintiff was entitled to a benefit under the policy.

The cases cited by the defendant in support of its contention that an insured is not entitled to an award of attorney's fees when they were not "forced to sue" to receive benefits are inapposite from this case (see Doc. 12, pp. 5-6). Thus, the insurers in those cases had not denied coverage; rather, they were performing in accordance with the terms of the insurance policy by continuing to act on the insured's behalf, either by providing a defense under a reservation of rights (Basik Exports & Imports v. Preferred National Ins. Co., 911 So.2d 291 (Fla. App. 2005); Ufer v. State Auto Ins. Co., 961 So.2d 1007 (Fla. App. 2007); Essex Builders Group v. Amerisure Ins. Co., 2007 WL 1839409 (M.D. Fla. 2007)), or by continuing to adjust the insured's claim (TriStar Lodging v. Arch Specialty Ins. Co., 434 F.Supp.2d 1286 (M.D Fla. 2006); State Farm v. Lorenzo, 969 So.2d 393 (Fla. App. 2007)). In sum, the insurers in those cases had not acted wrongfully.

Therefore, it is consistent with public policy to award an attorney's fee in this case in order to discourage an insurer's wrongful denial of coverage. See Pepper's Steel & Alloys, Inc. v. United States, supra, 850 So.2d at 465 (noting that a purpose of 627.428 "is to discourage insurance companies from contesting valid claims"); First Floridian Auto & Home Ins. Co. v. Myrick, supra, 969 So.2d at 1123-24 ("[T]he purpose of section

627.428 is to penalize an insurance company for wrongfully causing its insured to resort to litigation in order to resolve a conflict with its insurer when it was within the company's power to resolve it.").

In sum, the defendant had firmly denied coverage for the claim, for reasons that had nothing to do with the prematurity of the claim. Therefore, faced with an inevitable lawsuit that would bankrupt him absent insurance coverage, the plaintiff's filing of this lawsuit to compel coverage was not premature.

IV.

For the foregoing reasons, the defendant's settlement of the lawsuit, which afforded the plaintiff relief that the defendant denied he was entitled to prior to the filing of the lawsuit, is equivalent to a confession of judgment, thereby entitling the plaintiff to an award of attorney's fees incurred in the prosecution of this matter.[10]

It is, therefore, upon consideration,

ORDERED, ADJUDGED, and DECREED:

---

[10]This Order does not consider whether the plaintiff is entitled to attorney's fees incurred in the prosecution of this motion (see Doc. 11, p. 6) because neither party has briefed that issue. The parties are directed to address that issue in their memoranda concerning the amount of a reasonable attorney's fee.

That the Motion to Determine Entitlement to Award of Attorney Fees and Taxable Costs (Doc. 11) be, and the same is hereby, **GRANTED**, and the plaintiff is entitled to an award of attorney's fees.

DONE and ORDERED in Chambers, in Tampa, Florida this 18th day of September, 2009.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE