UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES OTTAVIANO,

      Plaintiff,

v.                       CASE No. 8:08-CV-2204-T-33TGW

NAUTILUS INS. CO.,

      Defendant.

---

## REPORT AND RECOMMENDATION

It was alleged in this lawsuit that the defendant breached its insurance contract with the plaintiff, a pool contractor, when it declined coverage for a claim by the Girl Scouts that the plaintiff constructed a defective swimming pool. The lawsuit was settled when the defendant agreed that the insurance policy provided coverage for the Girl Scouts' claim.

The plaintiff has filed a Motion for Award of Reasonable Attorney Fees and Costs (Doc. 26). The defendant argues that the amount of the attorneys' fee is unreasonable and the costs are excessive (Doc. 35). The

motion was referred to me for resolution.[1]  Having considered the materials

submitted and the governing legal standards, I recommend that the plaintiff

be awarded an attorneys' fee of $27,520, and $1,425 in costs.

I.

On September 30, 2008, the plaintiff, a contractor who builds

commercial swimming pools, filed a lawsuit in state court alleging that the

defendant, with whom he was insured under a Commercial General Liability

insurance policy, breached their contract by wrongfully denying coverage for

a claim made against him by the Girl Scouts that he constructed a defective

swimming pool (Docs. 1, 2).[2]  The case was subsequently removed to federal

court (Doc. 1).

On October 31, 2008, the Girl Scouts filed a lawsuit against the

plaintiff for breach of contract regarding the defective swimming pool (see

---

[1]This motion, as indicated, was referred to me for disposition (Doc. 29). However, in an abundance of caution, the matter is presented as a report and recommendation because there are appellate courts that hold an attorney's fee motion is a dispositive motion that may not be resolved by a magistrate judge. See Estate of Conners by Meredith v. O'Connor, 6 F.3d 656, 658-59 (9th Cir. 1993); Rajaratnam v. Moyer, 47 F.3d 922, 924 (7th Cir. 1995).

[2]The plaintiff states that, due to improper construction of the swimming pool shell by subcontractors, the pool shell cracked and was therefore unable to retain water at an appropriate level (Doc. 11-4, ¶4).

Doc. 11-6, ¶13).  The plaintiff forwarded to the defendant a copy of that complaint, and subsequently transmitted an amended complaint, with a demand that the defendant defend and indemnify him (id., ¶14).

On November 18, 2008, the defendant informed plaintiff's counsel that it had agreed to defend and indemnify the plaintiff in the lawsuit brought against him by the Girl Scouts with no coverage defenses being reserved, and that the only remaining issue was an attorneys' fee (id., ¶15).  Accordingly, the plaintiff filed with the court a "Notice of Partial Settlement Agreement," which stated that "the parties have resolved the coverage issues in this case" and that the only remaining issue is the attorneys' fee  (Doc. 7).[3]

The parties disagreed whether the plaintiff was entitled to recover his reasonable attorneys' fees pursuant to §627.428, Fla. Stat., which affords a prevailing insured a reasonable attorneys' fee. After considering the parties' memoranda on this issue  (Docs. 11-13, 18), the court determined that the plaintiff was entitled to an award of attorneys' fee because the defendant's

---

[3] The court therefore denied on procedural grounds the defendant's motion to dismiss that it filed before the settlement (Doc. 8).  The plaintiff stated incorrectly in his fee motion that the defendant settled the matter after the defendant's motion to dismiss was denied (Doc. 26. p. 8).

settlement of the case is considered equivalent to a confession of judgment (Doc. 24).

Thereafter, the plaintiff filed this Motion for Award of Reasonable Attorney Fees and Costs (Doc. 26), seeking an attorneys' fee of $104,650, and costs of $1,935. The defendant opposes the motion, arguing that a reasonable attorneys' fee in this case is $14,210, and that the costs are excessive (Doc. 35).

Plaintiff's counsel submitted their time records, and both parties submitted expert opinions in support of their contentions (Docs. 26, 30, 35). Oral argument was subsequently conducted on the motion (see Doc. 42).

## II.

Plaintiff's counsel seeks an award of an attorneys' fee under §627.428(1), Fla. Stat., which provides in pertinent part:

> Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named ... insured ... under a policy or contract executed by the insurer, the trial court ... shall adjudge or decree against the insurer and in favor of the insured ... a reasonable sum as fees or compensation for the insured's ... attorney prosecuting the suit in which the recovery is had.

As indicated, the plaintiff is entitled to recover a reasonable attorneys' fee because a settlement is the functional equivalent of a verdict in favor of the insured under this statute (Doc. 24). Pepper's Steel & Alloys, Inc. v. United States, 850 So.2d 462, 465 (Fla. 2003).[4]

Section 627.428, Fla. Stat., directs that the prevailing insured be awarded a "reasonable" attorneys' fee. Florida has adopted the federal lodestar approach as the foundation for setting reasonable fee awards. Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985).

This method requires the court to determine a "lodestar figure" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney. Id. at 1151. The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that the hours are reasonable. Id. at 1150-51; Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). Once the lodestar is determined, the court must consider in contingency fee cases

---

[4] In diversity cases, the determination of a reasonable attorneys' fee is governed by state law. See All Underwriters v. Weisberg, 222 F.3d 1309, 1311-12 (11th Cir. 2000).

whether a enhancement of the lodestar is appropriate. Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 831 (Fla. 1990).

A. The plaintiff argues that he is entitled to a court awarded attorneys' fee of $104,650, which comprises a lodestar of $41,860, multiplied 2.5 times (Doc. 26, p. 15). The defendant argues that a reasonable attorneys' fee in this case is a lodestar of $14,210, and that no multiplier of this sum is warranted (see Doc. 35, p. 17).

In computing the lodestar amount, the following factors, enumerated in Rule 4-1.5 of the Rules Regulating the Florida Bar, are to be considered (Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 830 n.3):

> (1) The time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

(4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

(5) The time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

(8) Whether the fee is fixed or contingent....

Both parties rely on the affidavits of their fee experts, which incorporate these factors, in support of their respective positions as to the amount of a reasonable attorneys' fee (Docs. 30-1; 35, pp. 30-34).

1. <u>Reasonableness of the Number of Hours Expended.</u>

Florida courts first calculate the number of hours reasonably expended on the litigation. In this regard, "the attorney fee applicant should present records detailing the amount of work performed. Counsel is expected, of course, to claim only those hours that he could properly bill to his client.

Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary." Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150 (citations omitted). The fee opponent then "has the burden of pointing out with specificity which hours should be deducted." Centex-Rooney Const. Co., Inc. v. Martin County, 725 So.2d 1255, 1259 (Fla. App. 1999); see also Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1301.

The plaintiff in this case seeks compensation for 108.1 hours of legal work on this matter, which includes the services of two attorneys and one paralegal. This time was spent on factual development, filing the complaint, responding to a motion to dismiss, and filing memoranda on the plaintiff's statutory entitlement to attorneys' fees (Docs. 26, p. 3; 26-3; 26-4; 26-5). Specifically, the attorneys seek compensation for the following number of hours: Kim Wells - 96.5 hours and Daniel F. Pilka -7.0 hours (Doc. 26, p. 3).[5]

---

[5]Wells' time records reflect a voluntary reduction of hours from 126 to 96.5 (compare Doc. 26-1, p. 11 with Doc. 26-3, p. 13).

Additionally, the plaintiff seeks reimbursement for 4.6 hours of services by paralegal Raquelina Woods (see Doc. 26-5).

The defendant does not challenge reimbursement for paralegal Woods' services (see Doc. 35, ¶¶ 39, 119). However, the defendant argues that a reasonable number of attorney hours in this case is 50 – less than half the amount sought by the plaintiff (id., ¶¶ 120-21).

In support of the reasonableness of the hours requested, plaintiff's counsel submitted detailed time records (Doc. 26-3) and the affidavit of his fee expert, attorney David J. Pettinato (Doc. 30-1). Pettinato, a member of the Florida Bar since October 1995, practices insurance litigation with the Merlin Law Group (id., ¶¶ 3, 4). He states that he has "been personally involved in many of these types of federal court cases" and has "personal knowledge of the reasonable length of time to litigate these types of cases" (id., ¶11B; see also id., ¶7).

After reviewing the case file and other relevant information, Pettinato opines that a "proper and reasonable amount of time spent on the matter at issue" is 104.3 hours (id., ¶¶ 9-11, 13). Thus, other than excluding 3.8 hours of work regarding a civil remedy notice and Rule 11 research,

Pettinato opined that the time spent on this case was reasonable given its complexity, the vigorous defense, and the time and procedural requirements of federal court (id., ¶¶ 10, 11G).

In support of its contention that the plaintiff should be compensated for only 50 hours of services in this case, the defendant proffered the affidavit of fee expert Clinton D. Flagg (Doc. 35, pp. 30-34). Flagg, a member of the Florida Bar since 1980, is an AV-rated attorney who practices insurance litigation (id., p. 31, ¶¶ 5, 7, 8). He is the founding partner of The Law Offices of Clinton D. Flagg, P.A., with locations in Naples and Miami, Florida, and has been involved in thousands of insurance-related cases (id., p. 30, ¶6; p. 31, ¶¶ 9, 10).

After reviewing the defendant's case file and discussing the case with defense counsel, Flagg opines generally that "the reasonable number of hours necessarily expended in this case should have totaled no more than 50" because this case did not present complex or novel issues (id., ¶¶ 14, 17, 23). The defendant has also asserted specific objections, which are addressed below.

I do not accept the defendant's contention that 50 hours is a reasonable amount of hours in this case. The issues in this case warranted factual and legal research, and required the drafting of memoranda. Further, federal court procedural rules required expedited consideration of certain legal matters, and plaintiff's counsel's efforts resulted in complete success for his client. Especially considering that plaintiff's counsel submitted detailed time sheets, Flagg's conclusory statement that plaintiff's counsel is entitled to less than one-half of the time they spent on this matter is insufficient. See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1301 ("[g]eneralized statements that the time spent was ... unreasonable ... are not particularly helpful and not entitled to much weight" and "[a]s the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.").

With regard to the defendant's specific objections, the defendant opines first that time spent addressing the Girl Scout claim is not compensable because it does not relate to the issues in this case (Doc. 35, p. 11, ¶¶ 75-77; p. 33, ¶21). This argument is meritless because the defendant's denial of coverage for the Girl Scouts' claim was the basis of this lawsuit. Therefore,

it was not only reasonable, but necessary, for plaintiff's counsel to communicate with Girl Scouts' counsel regarding that claim. The relevance of the Girls Scouts' claim is underscored by the defendant's representation that the filing of the Girl Scouts' lawsuit was the impetus for settling this case (see Doc. 12, p. 12, ¶59 (after reviewing the Girl Scouts' complaint, the defendant agrees there is coverage under the policy)). Therefore, the defendant's blanket objection to time addressing the Girl Scouts' claim should be rejected.

Next, the defendant argues that time spent communicating with Michael Barral is not compensable because "Attorney Barral['s]" role in this case is unknown (Doc. 35, p. 10; id. at p. 33, ¶21). This argument is misplaced because Barral is not, as the defendant believed, an attorney. Rather, during the hearing on this matter, it was clarified that Barral is a public adjuster that the plaintiff employed prior to retaining counsel. As such, Barral possessed factual information pertinent to this lawsuit. Therefore, the defendant's objection to time spent communicating with Barral should be rejected.

Additionally, the defendant argues that plaintiff's counsel spent too much time drafting a garden-variety complaint and the memorandum in opposition to its motion to dismiss (id., pp. 8-11). The defendant contends

-12-

that each document could have been drafted by an insurance litigation attorney of average competence in two hours (id.). However, "[t]he measure of reasonable hours is ... not the least time in which it might theoretically have been done." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1306. Further, the premise of this argument is flawed because the time spent on these matters included several tasks other than drafting of these documents, such as legal research and fact review (see Doc. 26-3). Considered in their totality, it is not apparent that counsel spent an inordinate amount of time on these matters. See Norman v. Housing Authority of City of Montgomery, supra. Therefore, these objections should be rejected.

The defendant also argues that work related to the fee entitlement issue should be reduced to 20 or 25 hours because it did not present a novel or complex legal issue (Doc. 35, pp. 12-13).[6] This argument presents a closer question. Thus, an extraordinary 66.2 hours of attorney time – more time than was spent on the underlying coverage dispute – was expended after the coverage issue was settled (Doc. 26-3, ¶8). Considering that the fee

---

[6]The parties agree that attorneys' fees are compensable for time spent litigating entitlement to a reasonable attorneys' fee (see Doc. 26, p. 4; Doc. 35, p. 12 n.7). See State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 832-33 (Fla. 1993).

entitlement issue, which accounts for the majority of these hours, involved well-established and uncomplicated principles of law that an experienced insurance litigator would likely be familiar with, this time expenditure seems high. On the other hand, the defendant's challenge is conclusory; it does not identify which of the plaintiff's specific time entries are excessive, and it does not make a sufficient showing that reimbursement for more than 25 hours is unreasonable. See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1301. Therefore, this circumstance will instead be taken into consideration in determining the hourly rate. See id. at 1306 ("If the court believes that prevailing counsel was merely inefficient, that fact should be reflected in the hourly rate awarded.").

On the other hand, the defendant argues meritoriously that legal work regarding the civil remedy notice of insurer violation (CRN) is not compensable (Doc. 35, pp. 9-10). As the defendant points out, the CRN is a condition precedent to filing a bad faith claim. It is distinct from, and does not become ripe until the completion of, the breach of contract claim. See Blanchard v. State Farm Mutual Auto. Ins. Co., 575 So.2d 1289, 1291 (Fla.

App. 1991). Therefore, legal work on the CRN is not pertinent to this breach of contract claim.

Plaintiff's citation to Maltzer v. Provident Life and Acc. Ins. Co., 843 F. Supp. 692, 695 (M.D. Fla. 1993), does not compel a different conclusion. In Maltzer, legal services related to a bad faith claim were reimbursed in a breach of contract action because they produced evidence that was relevant to the breach of contract claim. Id. Here, the plaintiff merely speculates that the potential for a bad faith claim may have expedited the defendant's decision to afford coverage (Doc. 26, p. 13). This speculation is insufficient to warrant reimbursement of fees associated with this distinct claim. Even the plaintiff's fee expert agrees that time related to the bad faith claim is not compensable (see Doc. 30-1, p. 6, ¶11A). Counsel's time records reflect approximately 5.1 hours spent on this issue.[7] Accordingly, I recommend that 5.1 hours be deducted for CRN work.

---

[7]The following time entries related solely to the CRN were discounted (Doc. 26-3, p. 6): 9/2/08 file review for CRN totaling 2.1 hours; 9/4/08 drafting CRN totaling 1.4 hours; 9/11/08 continued preparation of CRN totaling .8 hours; and 9/23/08 the filing of the CRN totaling .8 hours.

Finally, the defendant challenges reimbursement for attorney Pilka's seven hours of legal services (Doc. 35, p. 8). The defendant argues that Pilka's time should be stricken because "all of the [defendant's] dealings were with Attorney Wells[,] ... [Wells] signed all of the pleadings ... and Pilka's time ... did not result in the settlement or finding of entitlement" (id.). However, the general rule is that "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated ... for the distinct contribution of each lawyer." Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1302. The defendant has not cited any legal authority that Pilka's limited role disqualifies him from reimbursement for his services. Therefore, this argument is properly rejected.

The defendant also argues that Pilka should not be reimbursed for work on a joint stipulation that was not filed with the court, or for legal research pertaining to a pleading that attorney Wells spent numerous hours drafting (Doc. 35, pp. 7-8, ¶¶ 41, 42). However, the defendant does not cite any legal authority that work on a settlement agreement is not compensable solely because it was not filed with the court. Further, the defendant's objection to Pilka's legal research is not persuasive because it is too

conclusory. See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1301.

In sum, plaintiff's counsel has submitted detailed time sheets which adequately set forth the time they spent on this matter. The defendant has identified 5.1 hours of services performed by attorney Wells that are not compensable. Otherwise, the defendant has not persuasively argued that time entries should be reduced or eliminated. Therefore, the number of hours of legal work I recommend be reimbursed to each attorney in this action is as follows:

| Counsel | Number of hours |
|---|---|
| Wells | 91.4 |
| Pilka | 7.0 |
| **Total attorney hours:** | **98.4** |

It should be noted that the defendant's failure to argue persuasively that the records contain excessive time does not mean that the plaintiff's claim does not include such hours. In particular, the time spent on the fee entitlement issue appears excessive. However, since the defendant has not articulated sufficiently specific objections to these hours, it is not recommended that they be reduced. See Norman v. Housing Authority of City

of Montgomery, supra; Centex-Rooney Const. Co., Inc. v. Martin County,
supra, 725 So.2d at 1259.

    2. Hourly Rates.

    The second half of the lodestar equation requires the court to
determine a reasonable hourly rate for the services of the prevailing party's
attorney (Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at
1150-51):

> In establishing this hourly rate, the court should
> assume the fee will be paid irrespective of the
> result, and take into account all of the [Rule 4-1]
> factors except the "time and labor required," the
> "novelty and difficulty of the question involved,"
> the "results obtained," and "[w]hether the fee is
> fixed or contingent." The party who seeks the fees
> carries the burden of establishing the prevailing
> "market rate," *i.e.*, the rate charged in that
> community by lawyers of reasonably comparable
> skill, experience and reputation, for similar services.

Further, as the plaintiff acknowledges (Doc. 26, p. 4), "[t]he court ... is itself
an expert on the question [of fees] and may consider its own knowledge and
experience concerning reasonable and proper fees...." Norman v. Housing
Authority of City of Montgomery, supra, 836 F.2d at 1303.

Attorneys Wells and Pilka each request a fee based on an hourly rate of $400 (Doc. 26, p. 3). Wells, who was the primary attorney on this matter, has been licensed to practice law in Florida for more than twenty years, and states that he has extensive experience in insurance litigation (Doc. 26-3, ¶2). During the pertinent time period, Wells was an associate with Pilka & Associates, subsequently became a partner with Pilka & Wells, P.A., and then become managing partner of Wells Law Group (id., ¶1).

Pilka, Wells' former law partner, states that he "oversaw and supervised" Wells' handling of this matter (Doc. 26-4, ¶¶ 3, 5). Pilka has been admitted to practice law in Florida for more than twenty-five years, and states that he has extensive experience in insurance litigation (id., ¶2).

In support of the reasonableness of counsel's hourly rate, the plaintiff submits the affidavit of his fee expert, Pettinato. He asserts that he is "familiar with the general range of hourly rates charged by civil trial attorneys ... having the skills, experience, knowledge and qualifications similar to those of attorneys Kim Wells and Daniel Pilka," and that an hourly rate of $400 is reasonable for their services (Doc. 30-1, ¶¶ 8, 10, 11H).

Additionally, plaintiff's counsel aver that their requested hourly rate is consistent with attorneys practicing insurance litigation in central Florida (Doc. 26-3, ¶¶ 5, 9; Doc. 26-4, ¶5). This opinion lacks probative value because, among other reasons, they opine as to central Florida rates. The "relevant market" for purposes of determining the reasonable hourly attorney rate is "the place where the case is filed," American Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999), and central Florida encompasses Orlando, which is not in this division (see Local Rule 1.02).

The defendant presents Flagg's fee affidavit in support of its contention that a reasonable hourly rate is $275 (Doc. 35, p. 17). Flagg states that he is familiar with hourly rates charged in the relevant market by civil trial attorneys having skills, qualifications, and experience similar to plaintiff's counsel, and opines that the range of appropriate hourly rates for this type of work is $200 to $300 (id., p. 32, ¶¶ 11, 12, 16). Flagg further specifies that he, and other law firms, would have represented the plaintiff in this matter for an hourly rate of $225 (id., ¶16). Consequently, Flagg opines that a reasonable hourly rate in this case is $225 (id., ¶15).

Considering the probative evidence in this case, and my knowledge of the prevailing market rate for insurance litigators with comparable experience and skill, a reasonable hourly rate for plaintiff's counsel is $275. See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1303 (the court is itself an expert). In arriving at this conclusion, I have given some weight to Flagg's expert opinions, but disregard Pettinato's opinions because they lack probative value.

Significantly, Pettinato is seeking compensation for his expert opinion at the same hourly rate sought by counsel. Thus, instead of an objective opinion regarding the reasonable value of plaintiff's counsel's services, Pettinato appears to be driven by his own desire to obtain a high hourly rate for his services, which, according to the Florida Supreme Court, would customarily have been offered without compensation. See Travieso v. Travieso, 474 So.2d 1184, 1186 (Fla. 1985) (expert fee opinions should be provided as a courtesy except in extraordinary circumstances). Such "back scratching" clearly vitiates the value of Pettinato's opinion.

Moreover, aside from any personal motivation, Flagg's opinions are more persuasive because they are based upon far greater legal experience

and reputation than Pettinato, and contain more specificity than Pettinato's. See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1299 ("[t]he weight to be given to opinion evidence ... will be affected by the detail contained in the testimony ... and breadth of the sample of which the expert has knowledge.").

Thus, Flagg, who has his own law firm, has thirty years of legal experience and involvement in thousands of insurance cases (Doc. 35, p. 31, ¶¶ 8, 10). Pettinato, who has been an attorney for less than half of that time, is an associate whose involvement in insurance cases, although substantial, is not comparable to Flagg. Significantly, Flagg is an AV rated attorney, while Pettinato's reputation for candor has been questioned by this court. See Tristar Lodging, Inc. v. Arch Specialty Ins. Co., 434 F. Supp.2d 1286, 1302 (M.D. Fla. 2006), aff'd 215 Fed. Appx. 879 (11th Cir. 2007)(unpub. dec.)(court rejecting Pettinato's contentions as disingenuous).

Moreover, Flagg's greater knowledge is reflected in the specificity of his affidavit, in which Flagg opines a range of reasonable rates and specifies an hourly rate that other insurance litigators would have charged in this case. In contrast, Pettinato asserts in a vague and conclusory manner that an hourly

rate of $400 is "in line and reasonable with fees customarily charged in the locality for similar legal services" (Doc. 30-1, ¶10). See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1301 (conclusory statements as to reasonableness of rates is not satisfactory; "the best information available to the court is usually a range of fees").[8]

In addition, Flagg's opinion is more consistent with my knowledge and experience of a reasonable hourly rate in comparable circumstances. See id. at 1303 (the court is itself an expert). As someone who has handled numerous attorney fee motions over the years, I have reserved hourly rates in the $300-$400 range for the most skilled attorneys litigating complex cases. Although Wells and Pilka clearly possess substantial legal experience, their requested hourly rates are unreasonable under the circumstances of this case.

Moreover, attorney Pilka's characterization of his role as "overs[eeing] and supervis[ing Wells'] handling of ... [this] case" (Doc. 26-4, ¶3; see also id., ¶5) belies the notion that Wells is deserving of a rate awarded

_____

[8]The only other hourly rate mentioned in Pettinato's affidavit is his billing rate of $450 which, according to Pettinato himself, exceeds the fees customarily charged in the area (see Doc. 30-1, ¶¶ 2, 10).

to the most skilled litigators. See Norman v. Housing Authority of City of Montgomery, supra, 836 F.2d at 1300 ("Legal skill may be a function of experience, but that is not always the case."). Further, plaintiff's counsel has not demonstrated extraordinary skill in the provision of services in this case. Thus, the memoranda were of average quality, and a high number of hours were spent on the fee entitlement issue. As previously indicated, this latter circumstance, while not resulting in a reduction in the number of hours, is properly considered in reducing the rate at which those hours are compensated. See id. at 1300-01 ("skill incorporates ... efficiency," and "[e]fficiency means doing well just what ought to be done ... in a minimum of time").

The plaintiff also argues that this case required "superior skill" (Doc. 26, p. 7; see also Doc. 30-1, ¶¶ 11D, F, G, ¶14). However, the defendant's contention that this was a straightforward case of conflicting interpretations of policy language (Doc. 35, p. 32, ¶17) is supported by the plaintiff himself, who argued that the dispositive issue in this case was which one of two policy endorsements was controlling, and that one "specifically indicate[d] that there is ... coverage" (see Doc. 5, pp. 4-6). The defendant's agreement to the plaintiff's demands for insurance coverage within weeks after

the filing of this lawsuit, and before the court even ruled on the defendant's motion to dismiss, also controverts the notion that this case presented esoteric issues.

Further, despite the parties' analogies to inapposite caselaw which unduly lengthened the analysis of the fee entitlement issue, the legal principles underlying that issue are well-settled and uncomplicated. The plaintiff is being amply compensated for that legal work in the substantial number of hours being awarded. See Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150 (the difficulty of the issues is typically reflected in the number of hours expended on the litigation).

Finally, the plaintiff has not shown that any of the other Rowe factors warrant a higher hourly rate in this case. Thus, plaintiff's counsel does not assert that acceptance of this case precluded other employment (see Doc. 26, pp. 7-8). Further, although plaintiff's counsel asserts that there was some urgency in prosecuting this matter because it was removed to federal court, they do not contend that this circumstance precluded work on other cases. Of course, any additional time is reimbursed in the number of hours for which they will receive compensation. Lastly, plaintiff's counsel had no previous

relationship with the plaintiff (id., p. 8), so that factor does not affect the determination of a reasonable hourly rate.[9]

Therefore, for the foregoing reasons, I recommend that the hourly rates of plaintiff's counsel be set as follows:

| Counsel | Rate per hour |
|---------|---------------|
| Wells | $275 |
| Pilka | $275[10] |

Notably, this is the rate advocated by the defendant, despite the opinion of a lower rate by its fee expert (Doc. 35, p. 7). Regardless, it is the rate that, in my view, should be applied.

Accordingly, the sum of these hourly rates multiplied by the number of hours expended in this case, in addition to the fees generated by

---

[9]Plaintiff's counsel seemingly suggests that the plaintiff's agreement to an hourly rate of $450 evidences the reasonableness of their rate. However, "because the party paying the fee has not participated in the fee arrangement between the prevailing party and that party's attorney, the arrangement must not control the fee award." Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 831 (citation omitted). The plaintiff had little reason to scrutinize the hourly rate since he was not going to pay it.

[10]Pilka has requested compensation at the same rate as Wells. In consideration of this factor, and his limited role in this case, it is appropriate to award him the same rate as Wells.

the services of paralegal Woods for whom compensation is not challenged, results in the following lodestar amount:

| Counsel | Hourly Rate | Number of Hours | Sum |
|---------|-------------|-----------------|------|
| Wells | $275 | 91.4 | $25,135 |
| Pilka | $275 | 07.0 | $ 1,925 |
| Paralegal Woods | $100 | 04.6 | $    460 |
| **Total Lodestar** | | | **$27,520** |

### IV.

The plaintiff contends that the court should adjust this lodestar figure upward by a factor of 2.5 (Doc. 26, p. 15). The defendant opposes the application of any multiplier, contending that the circumstances of this case do not warrant an enhancement of the lodestar, and that an enhancement would exceed a reasonable attorneys' fee (see Doc. 35, pp. 14-16).

When the prevailing party's counsel is employed on a contingent fee basis, the trial court must consider whether a multiplier of the lodestar is appropriate. Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 831.[11] However, its application is discretionary. Id. at 835. Further, as recently

---

[11]The multiplier in breach of contract cases may range from 1 to 2.5, depending upon the likelihood of success at the outset of the litigation. See Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 834.

reiterated by the U.S. Supreme Court in Perdue v. Kenny A. ex rel. Winn, 559 U.S. __ , 2010 WL 1558980 at **6-7 (April 21, 2010), there is a "strong" presumption that the lodestar reflects a reasonable statutory fee, and enhancements may be awarded only in "rare" and "exceptional" circumstances.[12]

In determining whether a multiplier is necessary, the Florida Supreme Court has stated that the following factors are to be considered (Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 834):

> (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe [472 So.2d 1145] are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. Evidence of these factors must be presented to justify the utilization of a multiplier.

---

[12]To the extent that Perdue announces any principles not previously stated by the Florida Supreme Court, there is no reason to think that the Florida Supreme Court would not adopt them. As indicated, Florida adopted the federal lodestar method for determining a reasonable attorneys' fee, Fla. Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150, and the Florida Supreme Court has previously modified its use of the contingency fee multiplier "in view of ... decisions by the United States Supreme Court." Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 829.

However, factors that are adequately accounted for in the lodestar cannot be the basis for enhancing the lodestar. Perdue v. Kenny A. ex rel. Winn, supra, 2010 WL 1558980 at *7. In sum, the "party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." Id. at *3. Taking into consideration the relevant factors, it is recommended that the lodestar figure not be adjusted upward in this case.

With regard to the first factor, the Florida Supreme Court has stated that, "[b]efore adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement [the] plaintiff would have faced substantial difficulties in finding counsel in the local or relevant market." Sun Bank of Ocala v. Ford, 564 So.2d 1078, 1079 (Fla. 1990); see also Perdue v. Kenny A. ex rel. Winn, supra, 2010 WL 1558980 at *8 (fee applicant is "require[d to present] specific evidence that the lodestar fee would not have been adequate to attract local counsel"). Not only has the plaintiff failed to satisfy this burden, the defendant has presented affirmative evidence that a multiplier was not necessary to obtain competent counsel in this case.

Defense fee expert Flagg opined that "a contingency fee multiplier is not warranted in this case because the market does not call for one" (Doc. 35, p. 34, ¶26). Thus, Flagg expressed that "this market does not require a contingency fee multiplier to obtain competent counsel" because the plaintiff "could have obtained competent representation from a large number of law firms in the Ft. Myers, Bradenton, Sarasota, Tampa area, and that law firms in this area regularly take on cases such as this" in reliance on the statutory fee awarded to prevailing plaintiffs (id., p. 33, ¶¶ 24, 25).

Although the plaintiff argues vaguely in his motion that "it is doubtful that [he] could have obtained competent counsel without the prospect of a contingency fee multiplier" (Doc. 26, p. 7), he fails to support this contention with probative evidence. In this regard, the plaintiff states that he "contacted several attorneys who did not want to assist" him (Doc. 11-4, ¶4d). However, the plaintiff does not state how many attorneys he contacted before he retained present counsel, or if those attorneys even practice insurance litigation. Especially considering Flagg's expert opinion that the plaintiff could have obtained competent representation from a large number of law firms in the area (Doc. 35, p. 33, ¶24), the plaintiff's vague statement that

several attorneys did not want to assist him does not show that he had

exhausted the relevant market before obtaining present counsel. Therefore,

it is not reasonable to infer from this statement that the plaintiff would have

had significant difficulties in obtaining representation without a multiplier.

See Perdue v. Kenny A. ex rel. Winn, supra, 2010 WL 1558980 at *3 (fee

applicant needs to prove "with specificity that an enhanced fee is justified").

      Further, although the plaintiff's expert opines that plaintiff's

counsel is deserving of a multiplier, Pettinato has not opined that the plaintiff

would have had substantial difficulty finding competent counsel absent the

possibility of fee enhancement (see Doc. 30-1). See Standard Guar. Ins. Co.

v. Quanstrom, supra, 555 So.2d at 834 (evidence that the market requires a

contingency fee multiplier to obtain competent counsel must be presented);

see also Perdue v. Kenny A. ex rel. Winn, supra, 2010 WL 1558980 at *8

(fee applicant is "require[d to present] specific evidence that the lodestar fee

would not have been adequate to attract local counsel"). Rather, Pettinato

states (Doc. 30-1, ¶14):

> I recommend a 2.0 multiplier because of the level
> of complexity of the case, a need to understand
> complex issues regarding insurance coverage, the

few amount [sic] of attorneys that practice exclusively on first party property and bad faith insurance law, and because there was a more than likely probability that a coverage issue could have been decided by a trial court in favor of the insurance company based on the Court's reading and understanding of the policy's terms, conditions and exclusions.

None of these reasons establish that a fee multiplier was necessary to obtain competent counsel. Further, the purported complexity of the case is accounted for in the lodestar computation. Perdue v. Kenny A. ex rel. Winn, supra, 2010 WL 1558980 at *7 ("the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel"); Fla. Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150 (novelty and difficulty of issues are normally considered in determining a reasonable number of hours).

Moreover, Pettinato's opinion that there is a dearth of attorneys who practice "exclusively ... first party property and bad faith insurance law" (Doc. 30-1, ¶14), is not probative because the plaintiff has not shown that counsel must practice "exclusively" in these areas to provide competent

representation. In this regard, Flagg has specifically opined that the plaintiff "could have obtained competent representation from a large number of law firms" in the relevant area based upon a statutory fee and that no multiplier was necessary to obtain competent counsel (see Doc. 35, p. 33, ¶¶ 24, 25). Therefore, the plaintiff failed to demonstrate that, without the possibility of a multiplier, he would have had significant difficulties in obtaining representation on a contingency basis.

Another consideration in determining the propriety of an enhancement is whether there was an opportunity to mitigate non-payment of the attorneys' fee. Standard Guar. Ins. Co. v. Quanstrom, supra, 555 So.2d at 834. Plaintiff's counsel accepted this case on a pure contingency basis, thereby incurring a risk of no payment for their services and no opportunity to mitigate non-payment of the attorneys' fee – but only if the plaintiff did not prevail. If the plaintiff prevailed (as he did), the fee statute would seemingly assure payment of an attorneys' fee.

In all events, the existence of a contingent fee agreement does not mandate the application of a multiplier. Sun Bank of Ocala v. Ford, supra, 564 So.2d at 1079. If it did, the use of a multiplier would not be limited to

the "rare" and "exceptional" case. There is nothing about this case that places it in the "rare" and "exceptional" category. Consequently, a multiplier is not warranted simply because the case involved a contingency fee agreement.

On this question, consideration is also given to the results and the amount involved in the litigation. Standard Guar. Ins. Co. v. Quanstrom, supra. The plaintiff was completely successful in his claim and, in consideration of that success, he is being awarded a substantial attorneys' fee for all hours related to the claim. Thus, I find that this factor is adequately accounted for in the lodestar. See Perdue v. Kenny A. ex rel. Winn, supra, 2010 WL 1558980 at *7. Moreover, neither party has persuasively argued that the amount involved, which was the cost to repair or replace the defective swimming pool, is a significant factor in determining the propriety of an enhancement.

Finally, the plaintiff has not identified any other factor that has not been adequately accounted for in the lodestar which justifies an enhanced fee. See id. In particular, the plaintiff's contentions that this case presented complex issues and that counsel demonstrated superior skill are both unsupported, and, in any event, are adequately accounted for in the lodestar.

See id. at \*7 (noting that complexity of the case and quality of counsel's representation are normally reflected in the lodestar); Florida Patient's Compensation Fund v. Rowe, supra, 472 So.2d at 1150 (noting these factors are considered in determining the lodestar).

For the foregoing reasons, the plaintiff has not shown that an enhancement of the lodestar is warranted. To the contrary, the top range of reasonableness would be greatly exceeded if the court exercised its discretion to enhance the lodestar over what is already a substantial amount, considering that the case was settled weeks after it was filed and the majority of the fee was generated after settlement of the underlying coverage dispute.

Finally, I find that this fee fully satisfies the statute's purposes of "discourag[ing the] contesting of valid claims of insureds" and "reimburs[ing the] successful insured[] reasonably for ... [an] attorney's fee[] ... to enforce the[] contract[]". Fireman's Fund Ins. Co. v. Tropical Shipping and Const. Co., Ltd., 254 F.3d 987, 1010 (11th Cir. 2001). Accordingly, I recommend that the plaintiff be awarded an attorneys' fee of $27,520.

V.

Lastly, the plaintiff seeks recovery of costs totaling $1,935. These costs comprse a $310 filing fee, $15 service fee, and $1,610 for the services of the fee expert (Doc. 26, p. 15; Doc. 26-3, p. 15; Doc. 30-1, ¶15).

Pursuant to Rule 54(d), F.R.Civ.P., a prevailing party is entitled to reimbursement of costs enumerated in 28 U.S.C. 1920. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Filing and service fees are taxable under this statute. See 28 U.S.C. 1920. Accordingly, the plaintiff is entitled to reimbursement for the $310 filing fee and $15 service fee.

The plaintiff also seeks reimbursement for the cost of his fee expert, Pettinato (Doc. 26, p. 26). The plaintiff seeks an award of $1610 for the fee expert's services, comprising 3.4 hours of work at an hourly rate of $400, and $250 for 2 hours of work by his paralegal at an hourly rate of $125 (see id., Doc. 30-1, p. 11).

Although there is caselaw indicating that the cost of the plaintiff's fee expert is not taxable under federal law, see, e.g., Cates v. Sears, Roebuck & Co., 928 F.2d 679, 688-89 (5 th Cir. 1991), Wendel v. USAA Casualty Ins. Co., 2009 WL 1971451 at *6 (M.D. Fla. 2009)(unpub.

dec.), the defendant agrees that the plaintiff should be reimbursed for this expense, albeit at a lower hourly rate (Doc. 35, p. 17). Thus, the defendant argues that the fee expert's hourly rate of $400 should be reduced to $275 (id.). Taking into consideration the relevant evidence, and my own experience of reasonable hourly rates, I recommend that the plaintiff's fee expert receive an hourly rate of $250.

Thus, the plaintiff's fee expert has significantly less experience than plaintiff's counsel, and his legal services comprised the simpler task of reviewing fee records. Therefore, he is not entitled to the same hourly rate as plaintiff's counsel. Further, the plaintiff's fee expert has not presented persuasive evidence that justifies a higher hourly rate for his services. Therefore, based on 3.4 hours of work at an hourly rate of $250, it is recommended that the plaintiff be reimbursed $850 for the plaintiff's fee expert's services. Notably, this award is generous since, absent the defendant's concession, he was probably not entitled to it.

Additionally, based on the defendant's lack of objection (Doc. 35, p. 17), I recommend that the plaintiff be awarded the cost of the fee expert's paralegal which, based on 2 hours of work at an hourly rate of $125,

totals $250. In sum, reimbursement for the plaintiff's fee expert and paralegal total $1,100. Accordingly, I recommend that the plaintiff be reimbursed a total of $1,425 in costs.

## VI.

For the foregoing reasons, I recommend that the plaintiff be awarded $27,520 in an attorneys' fee pursuant to §627.428, Fla. Stat., plus statutory interest, and $1,425 in costs pursuant to Rule 54(d), F.R.Civ.P.[13]

Respectfully submitted,

THOMAS G. WILSON
DATED: MAY _18_, 2010     UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date

---

[13]This award is made in the form of a judgment in favor of the plaintiff. Fla. Stat. §627.428(3); Morrison v. Allstate Indemnity Co., 228 F.3d 1255, 1267-68 (11th Cir. 2000)(§627.428 awards the attorneys' fee to the insured, not his attorney). The plaintiff is entitled to an award of prejudgment interest from the date entitlement is established. Quality Engineered Installation, Inc. v. Higley South, Inc., 670 So.2d 929, 930-31 (Fla. 1996).

of its service shall bar an aggrieved party from attacking the factual findings

on appeal.  28 U.S.C. 636(b)(1).